| | | |
|---|---|---|
| **MAURICE DONNELL COOPER,** | : | |
| **Plaintiff** | : | |
| | : | **1:09-CV-2427** |
| **v.** | : | |
| | : | |
| **T.R. SNIEZEK,** *et. al.,* | : | **Judge Sylvia H. Rambo** |
| | : | |
| **Defendants** | : | |
| | : | |

## M E M O R A N D U M

This is a civil rights case brought by Maurice Donnell Cooper, an inmate currently incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill") against seven FCI-Schuylkill employees in their individual and official capacities, as well as the Federal Bureau of Prisons ("BOP"). Before the court are cross-motions for summary judgment filed on behalf of all Defendants and Plaintiff, along with Plaintiff's motion for a preliminary injunction. (Docs. 10, 27, 38.) For the reasons that follow, the court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment. The court will also deny as moot Plaintiff's motion for a preliminary injunction.

## I.        Background

### A.      Procedural Background

Plaintiff filed his complaint on December 10, 2009. (Doc. 1.) The court ordered him to file an amended complaint by no later than January 15, 2010, and he did so on January 13, 2010. (Doc. 12.) Prior to filing his Amended Complaint, Plaintiff filed a motion for injunctive relief requesting the court to order Defendants not to restrain access to his inmate account. (Doc. 10.)

The court ordered that Plaintiff's Amended Complaint and his motion for injunctive relief be served upon Defendants by the United States Marshal, and Defendants respond to both documents within sixty days of the date of service. (Doc. 14.) Service was effected on February 8, 2010. (Doc. 16.) After service of these documents, but before Defendants filed their response, Plaintiff filed a motion for summary judgment on April 14, 2010. (Doc. 27.) By order dated April 19, 2010, the court stayed briefing on this motion until Defendants filed their response. (Doc. 28.)

Following an enlargement of time, on June 8, 2010, Defendants responded to Plaintiff's Amended Complaint by filing a motion to dismiss or, in the alternative, a motion for summary judgment. (Doc. 38.) By order dated June 9, 2010, the court deemed Defendants' motion to be a motion for summary judgment decided pursuant to Federal Rule of Civil Procedure 56, lifted the stay of the briefing on Plaintiff's motion for summary judgment, and established a briefing schedule. (Doc. 39.) Both parties filed their respective supporting and opposing briefs, exhibits in support of their motions, as well as their reply briefs. (*See* Docs. 42, 46-48, 52-55.) Both motions for summary judgment are ripe for disposition.

On June 22, 2010, Defendants filed their brief in opposition to Plaintiff's motion for a preliminary injunction as well as supporting exhibits.[1] (Docs. 44-45.) No reply brief was filed by Plaintiff. This motion is ripe for disposition.

---

[1] Defendants' response to Plaintiff's motion for a preliminary injunction was due on June 8, 2010, along with their response to Plaintiff's Amended Complaint. Defendants provide no explanation as to why they filed their response late. However, because the issues presented in Plaintiff's motion for a preliminary injunction are moot, Defendants' procedural default is immaterial.

### B.    **Factual Background**
#### 1.  **Incident Reports Plaintiff received at FCI-Schuylkill**

The crux of Plaintiff's complaint surrounds two disciplinary incident reports that he received while at FCI-Schuylkill.  Plaintiff received the first incident report (1887193) on June 30, 2009, for being absent from his food service work assignment.  (Doc. 47, Defs.' Statement of Material Facts at ¶ 38 ("Defs.' SMF").) Defendant Diehl, the reporting cook supervisor, noted that Plaintiff's work hours were 10:00 a.m. to 1:00 p.m., but when he conducted his census of mainline workers at 12:10 p.m., Plaintiff was not present.  (*Id.* ¶ 39.)  Defendant Diehl noted that all inmates were told to check out with him prior to leaving their work assignment.  (*Id.* ¶ 40.)  Because Plaintiff was absent from work, he was issued a disciplinary incident report.

On July 2, 2009, a hearing was held at which time Plaintiff stated that after he completed his work on June 30, 2009, he departed food service without checking out with Defendant Diehl.  (*Id.* ¶ 41.)  Plaintiff added that he did check out with another officer, but did not recall that officer's name.  (*Id.* ¶ 42.)  The hearing officer sustained the charge and sanctioned Plaintiff with ninety days loss of telephone privileges.  (*Id.* ¶ 43.)

On July 7, 2009, Plaintiff filed an administrative remedy (546240-F1) with the institution contesting this decision. (*Id.* ¶ 23.)  On July 14, 2009, Defendant Sniezek, the warden, denied Plaintiff's appeal. (*Id.* ¶ 25.)  On July 30, 2009, Plaintiff appealed the warden's denial to the Northeast Regional Office, which partially granted the appeal and remanded the disciplinary action back to the prison. (*Id.* ¶¶ 26-27.)  The Regional Director determined that BOP officials had not thoroughly completed the incident report, and remanded the matter back so that they could do so. (*Id.*)  Prison officials amended the report to note that Plaintiff admitted to

leaving his work assignment without checking out with his immediate supervisor, and provided a copy of the amended report to Plaintiff on September 4, 2009. (*Id.* ¶ 47.)  The Regional Director's decision informed Plaintiff that, after he received the amended incident report, he could file a new administrative remedy with the institution; however, Plaintiff did not file any further appeals or remedies regarding this incident report. (*Id.* ¶¶ 29-30.)

On October 13, 2009, Plaintiff received his second incident report (1929830) charging him with lying or providing a false statement to a staff member. (*Id.* ¶ 48.)  The reporting employee noted that Plaintiff told him he needed copies of his legal materials, and that Warden Sniezek had ordered Case Manager Brill to make the copies, but Case Manager Brill refused.  (*Id.* ¶ 49.)  The reporting employee looked into what Plaintiff was telling him and verified that Warden Sniezek never made the statement.  (*Id.* ¶ 50.)

An initial hearing was held on October 15, 2009, and the matter was referred to the Discipline Hearing Officer ("DHO") for further hearing.  (*Id.* ¶ 51.)  At the initial hearing, Plaintiff received a copy of the "Inmate Rights at Discipline Hearing" form, as well as the form entitled "Notice of Discipline Hearing Before the DHO." (*Id.* ¶¶ 52-53.)  Plaintiff refused to sign the forms, and it was noted that Plaintiff did not request a specific staff representative or witnesses, rather he stated he would make the request at the DHO hearing.  (*Id.* ¶ 54.)

On October 27, 2009, the DHO held a hearing.  (*Id.* ¶ 55.)  Plaintiff was present and advised of his rights to a staff representative and to call witnesses.  (*Id.* ¶ 56.)  The parties dispute whether Plaintiff understood these rights and whether he waived his right to staff representation and witness testimony.  Defendants point to the DHO Report which states that he did understand his rights and that he waived staff representation and witness testimony.  (*See* Doc. 46-2, Decl. of Joseph

4

McCluskey at ¶ 7, Attach. 9, DHO Report.)  In contrast, Plaintiff points to his appeal of that decision where he states that he did not understand his rights and specifically requested a representative and the ability to call witnesses.  (*Id.* at Attach. 15, Regional Administrative Remedy Appeal.)

On November 4, 2009, the DHO issued his written decision finding that Plaintiff committed the prohibited act of lying or providing a false statement to a staff member.  (Defs.' SMF ¶¶ 59-60.)  The DHO sanctioned Plaintiff to fifteen days in disciplinary segregation, a thirteen day disallowance of good conduct time, a thirteen day forfeiture of non-vested good conduct time, and a four month loss of commissary privileges.  (*Id.* ¶ 61.)

On November 30, 2009, Plaintiff filed an appeal (565383-R2) with the Northeast Regional Office.  (*Id.* ¶ 31.)  In this appeal, Plaintiff sought review of the DHO's decision and alleged various procedural errors that were committed during the disciplinary process.  (*Id.* ¶ 32.)  On December 28, 2009, the Regional Director denied the appeal noting that Plaintiff's due process rights were not violated throughout the disciplinary proceedings.  (*Id.* ¶ 33.)  The Regional Director noted that the evidence supported the DHO's decision, and Plaintiff failed to apprise the DHO of his desire to have a staff representative or witnesses and he did not complain about these issues at the DHO hearing.  (*Id.* ¶ 34.)  On January 19, 2010, Plaintiff further appealed to the Central Office (565383-A1).  (*Id.* ¶ 35.)  This appeal was denied on May 13, 2010.  (*Id.* ¶ 36.)

## 2. **Facts Related to Plaintiff's Denial of Access to the Courts Claim**

Plaintiff alleges in his amended complaint that he was unable to get copies of his legal materials, and as such he could not meet court deadlines and was denied relief by the United States Supreme Court.  (*See* Doc. 12 at 3-4.)  On

October 29, 2007, Plaintiff, through his attorney, appealed his conviction of one count of attempted bank robbery and three counts of bank robbery to the Court of Appeals for the Ninth Circuit. (Defs.' SMF ¶ 62.) Plaintiff was represented by the federal public defender's office. (*Id.* ¶ 63.) On August 22, 2008, the Ninth Circuit denied Plaintiff's appeal because it found the district court did not commit a clear error of judgment when it decided to admit DNA evidence. (Doc. 46-3 at 24-25 of 52, *United States v. Cooper*, No. 07-10512 (9ᵗʰ Cir. Aug. 12, 2008)). On September 15, 2008, the Ninth Circuit issued its Mandate. (*Id.* at 26 of 52, Ninth Circuit Mandate.)

On November 14, 2008, Plaintiff's then-counsel sent him a letter advising of the Ninth Circuit's decision, apologizing for the delay in sending it to him, and advising him of the appeal process. (Defs.' SMF ¶ 67.) Plaintiff argues that he never received this letter, and that "the letter had been intercepted." (Doc. 52, Pl.'s Counterstatement of Material Facts, ¶ 67.) In support, Plaintiff cites to a motion he filed with the Ninth Circuit on February 9, 2009, for leave to file out of time a petition for rehearing *en banc*. (Doc. 46-3 at 27-40 of 52, Pl.'s Mot. for Leave to File Out of Time Rehearing En Banc.) Plaintiff's motion was denied, and on March 9, 2009, Plaintiff filed a petition for writ of certiorari with the United States Supreme Court, which was denied on October 5, 2009. (Defs.' SMF ¶¶ 69-70.)

In the midst of these proceedings, on July 21, 2009, Plaintiff filed administrative remedy (547869- F2) with FCI-Schuylkill claiming he could not afford to make copies of his legal materials, and, thus, he was denied access to the courts. (*Id.* ¶ 13.) On July 30, 2009, Warden Sniezek addressed Plaintiff's issue noting that he did not qualify to have copies made by staff at the expense of the institution since he was not indigent. (*Id.* ¶ 14.) While acknowledging that this was

Warden Sniezek's reasoning, Plaintiff asserts that his conclusion was incorrect because Plaintiff's prison account was "manipulated" to show that he had more money than he did. (Pl'.s Counterstatement of Material Facts ¶ 14.)

On August 10, 2009, Plaintiff appealed the Warden's denial to the Northeast Regional Office (547869-R1). (Defs.' SMF ¶ 16.) On September 9, 2009, the Regional Director denied the appeal noting that Plaintiff was not entitled to free copies of his legal materials because he had funds. (*Id.* ¶ 17.) On September 28, 2009, Plaintiff further appealed to the Central Office (547869-A1), and on January 29, 2010, the Central Office concluded that staff at FCI-Schuylkill acted in accordance with BOP policy directives. (*Id.* ¶¶ 18-19.)

## II.     Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.  " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

The court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. Fed. R. Civ. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

**III.**       <u>Discussion</u>

        In his Amended Complaint, Plaintiff asserts five counts. In count one, Plaintiff alleges that Defendant Diehl wrote a false disciplinary report against him, Defendant Maurer denied him procedural due process because he was not allowed to present witnesses at his due process hearing, and Defendant Talamantes, who was the hearing officer, denied him access to the courts by not permitting him to communicate with his attorney by telephone because he sanctioned Plaintiff with the loss of telephone privileges.

        In count two, Plaintiff alleges that Defendant Petrucci wrongfully restricted his financial account and Defendant Brill refused to provide him with photocopies of his legal materials, and these actions deprived him of his right of access to the courts and, with regard to his restrictions placed on his financial accounts, violated his Eighth Amendment rights because he was not able to maintain his personal hygiene.

        In count three, Plaintiff alleges that Defendant Sniezek violated the Eighth Amendment by making derogatory comments to him about his biological mother. In count four, Plaintiff alleges that Defendant Talamantes wrote a false disciplinary report charging him with lying to a staff member, and Defendants Petrucci and Bittenbender violated his due process rights by not providing him with representation or permitting him to have witnesses testify at his hearing for the alleged false disciplinary report. Finally, in count five, Plaintiff alleges that the BOP is liable for its failure to train its officers. Plaintiff argues that there are no genuine issues of material facts concerning any of these events, and therefore he is entitled to summary judgment.

        For their part, Defendants assert that they are entitled to summary judgment for three reasons. First, they assert that the individual Defendants who

were sued in their official capacity, as well as the BOP, an administrative agency of the executive branch of the United States government, are entitled to sovereign immunity because a suit against a federal official, or an administrative agency of the United States, for money damages in his or her official capacity is nothing more than a suit against the United States and the United States has not waived its sovereign immunity. Second, Defendants argue that Plaintiff has failed to exhaust his administrative remedies with regard to all of his claims except his access to the courts claim, and therefore all other claims should be dismissed. Finally, with regard to Plaintiff's access to the courts claim, Defendants argue that the undisputed record establishes that he had access to the courts to appeal his criminal conviction, and that Plaintiff has come forward with no evidence from which a reasonable jury could conclude that any actions taken by Defendants restricted Plaintiff's access to the courts. Having thoroughly reviewed the briefs and evidence submitted by the parties, the court finds that each of Defendants' argument is correct and will therefore grant summary judgment for Defendants and against Plaintiff.

A. <u>**Sovereign Immunity**</u>

Defendants in this case are federal prison officials and, in the case of the BOP, a federal executive agency. As such, Plaintiff's constitutional claims are brought pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens*, the Supreme Court implied a cause of action for damages against federal officials, as individuals, for the violation of constitutional rights. *Id.* at 396.

As Defendants point out in their motion for summary judgment, a plaintiff cannot proceed in a *Bivens* action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, *see FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994) (finding that *Bivens* claims for

10

damages against a federal agency are barred by the United States' sovereign immunity, absent waiver), or against any of the individual Defendants in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

In his brief in opposition, Plaintiff argues that his claims against the individual Defendants in their official capacity and the BOP should proceed because the court can exercise its equitable power and retain jurisdiction against these Defendants. Plaintiff fails to cite any authority for his proposition. Despite Plaintiff's plea for the court to retain jurisdiction of these claims, the court can find no authority to do so. In fact, all of the authority points to the opposite conclusion. *See e.g. Chinchello v. Fenton,* 805 F.2d 126, 130 n.4 (3d Cir. 1986) (affirming district court's conclusion that sovereign immunity barred an official-capacity *Bivens* claim); *Kabakjian v. United States,* 267 F.3d 208, 211 (3d Cir. 2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity); *see also Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (per curiam) (nonprecedential) (dismissing the plaintiff's Eighth Amendment medical claim against the defendants in their official capacities, observing that "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver"). Accordingly, the court will grant Defendants' motion for summary judgment as to Plaintiff's claims against the BOP and the individual Defendants in their official capacities.

### B.     Exhaustion of Administrative Remedies

Defendants also seek summary judgment of Plaintiff's claims against them in their individual capacities on the grounds that Plaintiff failed to exhaust his

administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), as to all of his claims with the exception of his access to courts claim. The court agrees.

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case." *Id*. at 93 (quoting *Nussle*, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray*, 285 F.3d at 295. Failure to exhaust available administrative remedies is an affirmative defense. *Id*. Therefore, it must be pleaded and proven by the defendants. *Brown*, 312 F.3d at 111.

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id*. The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id.* at § 542.14(b). The regulation states, in part:

> Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id*. If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of

BOP's General Counsel. *Id.* at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

In the instant case, Plaintiff claims that Defendant Diehl wrote a false disciplinary report against him when Diehl alleged that Plaintiff left work early; that Defendant Maurer denied him procedural due process by refusing to allow him to present witnesses; and, Defendant Talamantes, who sanctioned Plaintiff by restricting his telephone privileges, violated his access to courts by not permitting him to communicate by telephone with his attorney. All of these events stem from the disciplinary report that was issued by Defendant Diehl on June 30, 2009—incident report number 1887193. (*See* Defs.' SMF ¶ 38.)

As stated in the facts, Defendant Diehl, the reporting cook supervisor, noted that Plaintiff's work hours were 10:00 a.m. to 1:00 p.m., but when he conducted his census of mainline workers at 12:10 p.m., Plaintiff was not present. (*Id.* ¶ 39.) Defendant Diehl noted that all inmates were told to check out with him prior to leaving their work assignment. (*Id.* ¶ 40.) Because he was absent from work, Plaintiff was issued a disciplinary incident report.

On July 2, 2009, a hearing was held at which time Plaintiff stated that after he completed his work on June 30, 2009, he departed food service without checking out with Defendant Diehl. (*Id.* ¶ 41.) He added that he did check out with another officer, but did not recall that officer's name. (*Id.* ¶ 42.) The hearing officer sustained the charge and sanctioned Plaintiff with a ninety day loss of telephone privileges. (*Id.* ¶ 43.)

On July 7, 2009, Plaintiff filed an administrative remedy (546240-F1) with the institution contesting this decision. (*Id.* ¶ 23.) On July 14, 2009, Defendant Sniezek, the warden, denied Plaintiff's appeal. (*Id.* ¶ 25.) On July 30, 2009, Plaintiff

14

appealed the Warden's denial to the Northeast Regional Office, which partially granted the appeal and remanded the disciplinary action back to the prison. (*Id.* ¶¶ 26-27.) The Regional Director determined that the BOP officials had not thoroughly completed the incident report, and remanded the matter back so that they could do so. (*Id.*) Prison officials amended the report to note that Plaintiff admitted to leaving his work assignment without checking out with his immediate supervisor and provided a copy of the amended report to Plaintiff on September 4, 2009. (*Id.* ¶ 47.) The Regional Director's decision also informed Plaintiff that, after he received the amended incident report, he could file a new administrative remedy with the institution; however, Plaintiff did not file any further appeals or remedies regarding this incident report. (*Id.* ¶¶ 29-30.)

These facts demonstrate that Plaintiff did not exhaust his administrative remedies as to these claims. Once he received the amended incident report, Plaintiff could have filed a new administrative remedy with the institution, but the record reflects that he chose not to do so. It is immaterial that he appealed through the Regional Director level, as the regulations unequivocally state that no administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office, a level above the Regional Director level. *See* 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Plaintiff has not done this, and thus has not exhausted his administrative remedies as to his claims in the first count of his complaint.

A similar fate applies to Plaintiff's other claims. For instance, Plaintiff alleges that his Eighth Amendment rights were violated because of the restrictions placed on his financial accounts, and that Warden Sniezek violated the Eighth Amendment for allegedly making statements about his biological mother.

Defendants have supplied a declaration by Joseph McCluskey, a senior attorney at FCI-Allenwood who has access to the records and files of inmates committed to the custody of the BOP. (*See* Doc. 46-2 at 3-10 of 59, Decl. of Joseph McCluskey). In addition to this Declaration, Defendants have submitted the grievance forms and corresponding responses from BOP officials concerning the grievances filed by Plaintiff. (*See* Doc. 46-2 at 11-59 of 59 and Doc. 46-2 at 1-16 of 52.)

In his Declaration, McCluskey explains that in the ordinary course of business, a computerized index of all formal administrative requests and appeals filed by inmates is maintained in the BOP's computerized database. (Decl. of Joseph McCluskey at ¶ 12.) On May 27, 2010, McCluskey conducted a search of those records to determine whether Plaintiff has exhausted available administrative remedies regarding the claims he alleges against Defendants. That search revealed no exhausted administrative remedies that include his claim that his Eighth Amendment rights were violated by the restrictions placed on his financial accounts or the statements allegedly made by Warden Sniezek about his mother. (*See id.* at ¶¶ 14-19.) Plaintiff has pointed to nothing in the record that contradicts this evidence. As such, the court concludes that Defendants have met their burden of demonstrating that Plaintiff did not exhaust his remedies as to those claims.

As for Plaintiff's claims concerning the other disciplinary report issued by Defendants, the undisputed facts demonstrate that these claims were exhausted only *after* the filing of Plaintiff's Amended Complaint. On October 13, 2009,

Plaintiff received his second incident report (1929830) charging him with lying or providing a false statement to a staff member. (Defs.' SMF ¶ 48.) An initial hearing was held on October 15, 2009, and the matter was referred to the DHO who held a hearing on October 27, 2009. On November 4, 2009, the DHO issued his written decision finding that Plaintiff committed the prohibited act of lying or providing a false statement to a staff member. (*Id*. ¶¶ 59-60.) The DHO sanctioned Plaintiff to fifteen days in disciplinary segregation, a thirteen day disallowance of good conduct time, a thirteen day forfeiture of non-vested good conduct time, and a four month loss of commissary privileges. (*Id.* ¶ 61.)

On November 30, 2009, Plaintiff filed an appeal (565383-R2) with the Northeast Regional Office of the DHO's decision finding that Plaintiff committed the prohibited act of lying. (*Id.* ¶ 31.) In this appeal, Plaintiff sought review of the DHO's decision and alleged various procedural errors that were committed during the disciplinary process. (*Id.* ¶ 32.) While this appeal was pending, Plaintiff filed his complaint. (Doc. 1.)

On December 28, 2009—eighteen days after Plaintiff filed his complaint—the Regional Director denied the appeal noting that Plaintiff's due process rights were afforded throughout the disciplinary process. (Defs.' SMF ¶ 33.) The Regional Director noted that the evidence supported the DHO's decision and Plaintiff failed to apprise the DHO of his desire to have a staff representative or witnesses and he did not complain about these same issues at the DHO hearing. (*Id.* ¶ 34.) On January 13, 2010, Plaintiff filed his Amended Complaint. (*See* Doc. 12.) Six days later, on January 19, 2010, Plaintiff further appealed administratively to the Central Office (565383-A1). (Defs.' SMF ¶ 35.) This appeal was denied on May 13, 2010. (*Id.* ¶ 36.)

This chronology of facts demonstrates that Plaintiff did not exhaust his administrative remedies concerning these claims until nearly five months *after* he filed his Amended Complaint. The United States Court of Appeals for the Third Circuit has stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential). In citing to a case from the United States Court of Appeals for the Eighth Circuit, *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003), the Third Circuit found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 F. App'x at 993 (quoting *Johnson*, 340 F.3d at 627-28).

In the absence of any evidence to the contrary, the court concludes that Defendants have met their burden of demonstrating that Plaintiff has not exhausted his administrative remedies. Since the court is not permitted to excuse non-compliance with the BOP's administrative remedies, it concludes that Plaintiff has procedurally defaulted these claims and will grant Defendants' motion for summary judgment.

## C.    Access to the Courts Claims

The only claim brought by Plaintiff that was administratively exhausted is his access to the courts claim. Plaintiff alleges in his Amended Complaint that he was unable to get copies of his legal materials due to the fact that his financial account was restricted, and therefore he could not meet court deadlines and he was denied relief by the United States Supreme Court. (*See* Doc. 12 at 3-4.)

18

Unfortunately for Plaintiff, the undisputed facts do not support his version of events.

On October 29, 2007, Plaintiff, through his attorney, appealed his conviction of one count of attempted bank robbery and three counts of bank robbery to the Court of Appeals for the Ninth Circuit. (*Id.* ¶ 62.) Plaintiff was represented by the federal public defender's office. (*Id.* ¶ 63.) On August 12, 2008, the Ninth Circuit denied Plaintiff's appeal because it found the district court did not commit a clear error of judgment when it decided to admit the DNA evidence. (Doc. 46-3 at 24-25 of 52, *United States v. Cooper*, No. 07-10512 (9th Cir. Aug. 12, 2008)). On September 15, 2008, the Ninth Circuit issued its Mandate. (*Id.* at 26 of 52, Ninth Circuit Mandate.) On November 14, 2008, Plaintiff's counsel at the time sent him a letter advising of the Ninth Circuit's decision, apologizing for the delay in sending it to him, and advising of the appeal process. (Defs.' SMF ¶ 67.) Plaintiff argues that he never received this letter, and that "the letter had been intercepted." (Doc. 52, Pl.'s Counterstatement of Material Facts.) In support, Plaintiff cites to his motion filed with the Ninth Circuit on February 9, 2009, for leave to file out of time a petition for rehearing *en banc*. (Doc. 46-3 at 27-40 of 52, Pl.'s Mot. for Leave to File Out of Time Rehearing En Banc.) Plaintiff's motion was denied, and on March 9, 2009, Plaintiff filed a petition for writ of certiorari with the United States Supreme Court, which was denied on October 5, 2009. (Defs.' SMF ¶¶ 69-70.)

Nowhere does Plaintiff point to facts showing that Defendants in any way impeded his access to the courts. In his opposing brief, Plaintiff argues that from June 10, 2009, through August 2009, his financial account failed to show that he was indigent, and that Defendant Petrucci overcharged him $92.00 for photocopies on July 28, 2009. (*See* Doc. 53 at 7-18.) Consequently, he claims that he was unable "to meet imminent court deadlines and time sensitive issues, which resulted in the plaintiff being denied relief in the Supreme Court," and such conduct

impeded his "criminal litigation." (*Id.* at 18-19.) The undisputed facts demonstrate that Plaintiff filed his petition with the Supreme Court in March 2009, well before he claims to have had issues with his financial accounts. (*See* Doc. 54-2, Supreme Court Docket.) Plaintiff has not identified any filing that he was unable to file which resulted in the Supreme Court denying his petition for writ of certiorari.

As Defendants point out, Plaintiff also fails to come forward with any evidence to support his claim that when he was charged $92.00 for copies that these copies were for any legal proceeding. Plaintiff does not specify what proceeding these copies were for, instead he states only that they "had been needed to meet an imminent court deadline, and time sensitive issue." (Doc. 53, Pl.'s Joint Br. in Supp. of Pl.'s Mot. for Summ. J. and Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Joint Br.") at 20 of 49.) This is not enough. In support of his motion for summary judgment, Plaintiff must come forward with evidence supporting his claim; and in opposing Defendants' motion for summary judgment he must come forward with evidence demonstrating that there is a genuine issue of material fact that could be resolved in his favor at trial. He has done neither, and as such he has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Plaintiff also contends that he was unable to obtain copies to support his reply brief in the Supreme Court. (*See* Doc. 53, Pl.'s Joint Br. at 33 of 49.) Plaintiff also complains that he was unable to provide the Supreme Court with a copy of an "excerpt of record." (*Id.* at 34 of 49.) The court cannot verify these statements. Plaintiff has not provided the court with an affidavit that he was in possession of the record, that the record was essential to his appeal, and that some actions taken by Defendants actually impeded his ability to present these documents.

20

The fact that he makes these assertions in his brief is insufficient to defeat summary judgment. *See Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."); *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003) ("[I]t is clear that conclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment."). Moreover, the record appears to directly contradict his statements as it shows that Plaintiff did, in fact, file a reply brief with the Supreme Court on June 30, 2009. (*See* Doc. 54-2, Supreme Court Docket.)

Since Plaintiff has failed to proffer evidence such that a reasonable jury may conclude he was denied access to the courts by any of the Defendants with regard to his direct appeal of his criminal conviction or any other court filing. As such, summary judgment in favor of Defendants is appropriate.

### D.   Plaintiff's Motion for Preliminary Injunction

At the beginning of this case, Plaintiff filed a motion for a preliminary injunction. (Doc. 10.) The crux of that motion was Plaintiff's desire to have the court immediately order that his inmate financial account be unencumbered. The court did not entertain the motion at the time because it went to the heart of the issues presented in Plaintiff's case—*i.e.*, whether Defendants' imposition of discipline, including restrictions placed on Plaintiff's inmate account, for the incident report of lying to staff members, violated any of Plaintiff's constitutional rights. Based on the discussion in Part III.B., *supra*, it is clear that these matters were not administratively exhausted prior to being filed with the court, and, thus were never properly before the court. Since the court will grant summary judgment as to these claims, Plaintiff's motion for a preliminary injunction is moot.

**IV.**        <u>**Conclusion**</u>

        In accordance with the foregoing, the court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment. The court will also deny Plaintiff's motion for a preliminary injunction as moot. An appropriate order follows.

                                     s/Sylvia H. Rambo
                                     United States District Judge

Dated:  September 7, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICE DONNELL COOPER,** | : | |
| **Plaintiff** | : | |
| | : | **1:09-CV-2427** |
| **v.** | : | |
| **T.R. SNIEZEK,** *et. al.,* | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

# O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY
ORDERED THAT:**

(1)     Defendants' motion for summary judgment, (Doc. 38), is
**GRANTED**;

(2)     Plaintiff's motion for summary judgment, (Doc. 27), is **DENIED**;

(3)     Plaintiff's motion for a preliminary injunction, (Doc. 10), is
**DEEMED MOOT**; and,

(4)     The Clerk of Court shall enter judgment in favor of Defendants
and against Plaintiff and shall close the case.


s/Sylvia H. Rambo
United States District Judge

Dated:  September 7, 2010.